IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE KRAXBERGER, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO: 24-CV-5900 |
| | : | |
| SMB TEAM, LLC | : | |
| | : | |
| Defendant. | : | |

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT

**I. INTRODUCTION:**

Presently pending before this Court is Plaintiff's Motion for Summary Judgment, Defendant's Memorandum of Law In opposition thereto, and Plaintiff's Reply. Defendant now files its own Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. In this case, Plaintiff claims that she was misclassified by Defendant, and therefore entitled to overtime pay in accordance with the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., ("FLSA") and the Pennsylvania Minimum Wage Act, 43 P.S. Sec. 333.101-33311.5. ("PMWA"). However, Plaintiff cannot substantiate these claims as a matter of law or fact.

As a Business Coach earning $80,000 per annum, plus bonus, Plaintiff performed non-manual work directly related to the general business operations of Defendant's customers. Plaintiff also clearly exercised discretion and independent judgment with respect to matters of significance. Inasmuch as Defendant has

demonstrated these elements, Plaintiff is exempt from overtime under the FLSA and PMWA, which are treated the same for purpose of this analysis.

Plaintiff argues that she was essentially a customer-service representative who followed a rigid "script" and had no authority to offer strategic or business advice, making her exempt. Plaintiff's assertion strains credulity. With the exception of this case, Plaintiff touts herself out as having over thirty years of expertise in business consulting, counseling, coaching, strategizing, directing, and training with various Fortune 50 Companies, and a company of her own. Indeed, she was hired by Defendant, as a Business Coach due to her business expertise and acumen. Other than her Deposition testimony, <u>no</u> other evidence corroborates Plaintiff's claim that she did not have independent discretion and judgment in this capacity. This hard evidence includes Plaintiff's resume, the job description for the Business Coach position, Plaintiff's video sessions with clients, Plaintiff's self-evaluation, and even Plaintiff's post-employment offer and job description. Plaintiff's deposition should be discredited for these reasons as a matter of law, and Summary Judgment should be entered in favor of Defendant.

## II. **STATEMENT OF FACTS**:

### **Plaintiff's Credentials**

1. Plaintiff's resume states that she has "spent over 30 years as a successful business owner, coach, consultant, strategist, director, and corporate trainer helping Fortune 500 Corporations, Non-Profits, Faith-based Organizations, and small businesses overcome challenges, increase profitability, improve efficiencies, develop

leadership, and build strategic partnerships." Affidavit of Brennan Beltz, Para. 4; Ex "b" ("Beltz Aff.").

2. Plaintiff's resume states that she is a "Maxwell Certified Coach/Trainer, DISC Certified Trainer & Coach, Steven Covey Certified Facilitator & Trainer, Certified Mater Life Coach, ICISF Group Crisis Intervention, and ICISF Response Certification. Beltz Aff. Para. 4; Ex "b".

3. However, according to Plaintiff's deposition testimony, she had only one certification   Kraxberger Deposition 7:20-23 ("Kraxberger Dep.").

4. Plaintiff was hired by Defendant as a Coaching Program Advisor pursuant to the offer letter she received from Defendant on April 25, 2023. Beltz Aff., para. 2; Ex. "a".

5. Plaintiff was hired due to her business acumen and expertise, as represented in her resume. Deposition of Brennan Beltz, 63:17–25 ("Beltz Dep.").

6. Plaintiff was paid a salary of $80,000 per annum, plus bonus and benefits, and her job title was that of "Business Coach and Strategist." Beltz Aff., Ex. "a".

7. Defendant provides marketing, business coaching and fractional services to law firms to assist them with growing their practices. Beltz Dep.10 –14.

8. Defendant's Business Coach functionality represents one-third of its business and is a significant part of Defendant's operations. Beltz Dep. 7:10–14.

9. Plaintiff was responsible for providing business coaching to Defendant's law firm clients. Beltz Dep. 22:12–16.

10. Plaintiff serviced approximately 70 to 75 clients. Beltz Dep. 18:21–23.

11. Plaintiff's job description required her to hold monthly accountability calls with her clients, engage in problem solving with clients, give clients advice based on company frameworks, maintain and enforce program standards, implement new program initiatives for clients, identify client struggles and offer solutions to them, and work with clients to enhance their strategic planning, execution and overall business performance. Beltz Aff., para. 5, Ex. "c".

12. Plaintiff was also responsible for increasing leads, profit and efficiency of Defendant's clients, which required that she develop actionable claims and KPIs, otherwise known as key performance indicators. Beltz Aff., para. 5, Ex. "c".

13. This involved offering insights and best practices to improve organizational performance. Beltz Dep. 20:11–22.

14. It was up to the Business Coach as to how Defendant's clients were to reach these goals. Beltz Dep., 18:5–14.

15. Plaintiff designed and facilitated her sessions with clients to get these results as she saw fit. Beltz Dep. 25:24–25; 26:1–8.

16. Plaintiff was permitted to modify Defendant's Coaching framework depending on the circumstances of the client's needs. Beltz Dep. 26:9–15.

17. Plaintiff also did not need her manager's approval to provide Business Coaching advice to clients. Beltz Dep. 26:15–25.

18. The decisions Plaintiff made for her clients were based on her own business expertise. Beltz Dep. 29:7–14.

19. She did not need any approval for recommendations made to clients. Beltz Dep. 29:15–20.

20. It was up to Plaintiff as to how the client was to reach these goals. Beltz Dep. 18:5–14.

21. Plaintiff designed and facilitated her sessions with clients to get these results as she saw fit. Beltz Dep. 26:1–8.

22. Plaintiff was not given a script as to how she was to perform her coaching job. Beltz Dep. 35:23–25; 36:2.

23. Attached are Video excerpts from various sessions conducted by Plaintiff with Defendant's clientele. Beltz Aff. Para. 6; Ex. "d".

24. This evidence was produced by Defendant to Plaintiff's Counsel in the course of discovery on July 30, 2025. See Ex. "A".

25. Defendant's fast track feedback forms were used by Plaintiff and other coaches in order to assist with counseling and strategizing with clients. The form is designed to collect information from Defendant's clientele to provide Business Coaches with financial information to assist them with setting client goals during coaching sessions and is not a script of any kind. Beltz Aff., para. 7; Ex. "e".

26. The FTFF form itself does not contain any "script". Beltz Aff., para. 7; Ex. "e".

27. Plaintiff was not provided any script whatsoever to how she was to perform her coaching job. Beltz Dep. 35:23–25; 36:1.

28. EOS and Vivid Vision were tools that Plaintiff and clients utilized as she was providing Business Coaching. Beltz Dep. 19:9-25;20:1-24.

29. Business Coaches are permitted to work remotely, but are not supposed to work after hours or weekends. Beltz Dep. 12:19–20.

30. If this happens, Business Coaches are spoken to so that they better utilize their time throughout the day. Beltz Dep. 12:21–24.

31. Defendant encourages employees to work during work hours and not on weekends or after hours. Beltz Dep. 13:6–12.

32. The only employee who ever complained about working extra hours was Plaintiff. Beltz Dep. 13:23–24.

33. Plaintiff communicated that she worked extra hours "every now and then, but never asked for payment for overtime pay. Beltz Dep. 15:6–10.

34. Plaintiff was upset with the fact that she was working extra hours and not being compensated commensurately with the amount of work she was performing for Defendant. Beltz Dep. 15:21-24.

35. A true and correct copy of Plaintiff's self-appraisal is attached as Exhibit "B".

36. After Plaintiff's employment with Defendant, she accepted the position of Executive Director with NexGen Cyber Talent at a salary of $90,000 per annum. Kraxberger Dep. 89-90; Exhibit "C".

37. Plaintiff works 10 hours per week in this capacity. Kraxberger Dep. 90:16-18.

38. According to her offer letter, Plaintiff's job functions consisted of strategic planning, providing visionary leadership to the board, staff and volunteers, governance and board relations, fundraising and resource development, program and operations management, amongst other duties. See Ex. "C".

39. However, when question about her job functions, Plaintiff described them as "secretarial" and "customer service". Kraxberger Dep. 90:10-16.

### III. LEGAL ARGUMENT:

#### A. Standard of Review.

A Moving Party is entitled to Summary Judgment where "there is no genuine issue as to any material fact and [they are] is entitled to a Judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a Summary Judgment Motion, a Court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the [Summary Judgment] motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead, he must show where in the record there exists a genuine dispute over a material fact." Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted).

#### B. The Administrative Exemption

The FLSA Administrative Exemption applies to any employee who is:

"(1) Compensated on a salary or fee basis at a rate of not less than $455 per week exclusive of board, lodging or other facilities;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." See 29 C.F.R. § 541.200(a) (2016).

### i. Plaintiff's Work Satisfies the Primary Duty Standard

The second requirement, the "primary duty" requirement, means that "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." See § 541.201(a). Critical to the instant case, a primary duty may include "<u>employees acting as Advisers or Consultants to their employer's clients or customers (as tax experts or Financial Consultants, for example)</u> . . . ." See § 541.201(c) (emphasis added). Factors to considered in determining a primary duty, include: "(1) the relative importance of the exempt duties as compared to other types of duties; (2) the amount of time spent performing exempt work; and (3) the employee's relative freedom from direct supervision. See § 541.700(a)."

Defendant argues that Plaintiff meets this standard for second prong, as she performed work directly related to general business operations of its customers. The Third Circuit case of <u>Swartz v. Windstream Communications, Inc.</u>, 429 Fed. App. 102 (2011), is particularly instructive in this regard.  In that case, a former employee likewise brought a claim under the FLSA claiming he was entitled to overtime wages. The plaintiff assisted with the sales of his employer's product by custom-designing telecom systems to meet each prospective customer's unique needs.

With regard to the second prong, the Third Circuit noted that the Plaintiff's primary duty constituted work that serviced his employer's core business - the sale of Telecom Systems. 429 Fed. Appx. at 105.  The Court acknowledged that "an employee's primary duties are directly related to his employer's management or general

business operations when the employee 'performs work directly related to assisting with the running or servicing of the business'". The Third Circuit reasoned that the Defendant was a telecommunications provider and that his business was to sell telecommunication systems. The Plaintiff assisted with the sales by custom designing telecom systems to meet each customer's unique needs. He therefore satisfied the second requirement.

The case at bar presents a similar set of facts. Defendant's core business, indeed, one third of its entire functionality, involves providing Business Coaching services to its Clientele, law firms. Plaintiff was hired as a Business Coach to provide Defendant's customers with monthly accountability calls, problem solving, advice, maintaining and enforce program standards, implementing new program initiatives, identifying client struggles and offering solutions to clients, and working with clients to enhance their strategic planning, execution and overall business performance. Beltz Aff., para. 5; Ex. "c". These functions constituted work that services Defendant's core business – the Business Coaching function. As such, Defendant has clearly satisfied the second prong.

### ii. **Plaintiff's Work Satisfies the Discretion Standard**

The third requirement, "discretion", involves "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." See § 541.202(a). Further, "[t]he exercise of discretion and independent judgment implies that the employee has the authority to make an independent choice, free from immediate direction or supervision. However, employees are considered to have exercised discretion and independent judgment <u>even</u>

Page 9

<u>if their decisions or recommendations are reviewed at a higher level</u>." See § 541.202(c). (emphasis added).

      Defendant has likewise demonstrated this prong of the administrative exception. First, as previously stated, Plaintiff's job description speaks volumes as to the functions she was hired to perform.  Pursuant to Plaintiff's job description and the requirements of her position, she was to hold monthly accountability calls with her clients, engage in problem solving with clients, give clients advice based on Company frameworks, maintain and enforce program standards, implement new program initiatives for clients, identify client struggles and offer solutions to them, and work with clients to enhance their strategic planning, execution and overall business performance. Beltz Aff., para. 5, Ex. "c".

      Not only did Plaintiff's job description evidence her independence, this is how she was expected to do her job on a day-to-day basis.   She was expected to work freely and independently with her clients. She was responsible for making "…decisions on their growth. Beltz Dep. " 22:12–16.  She was permitted to modify Defendant's coaching framework depending on the circumstances of the client's needs. Beltz Dep. 26:9–15. She did not need her manager's approval to provide Business Coaching advice to clients.  She was allowed to make her own recommendations and do what was best for the client based on her own business expertise. Beltz Dep. 29:7–14. She did not need any approval for recommendations made to clients. Beltz Dep. 29:15–20. In fact, it was entirely up to her as to how the client was to reach these goals. Beltz Dep. 18:5–14.

      Moreover, nothing in Plaintiff's resume or credentials suggests that she took direction in any of the positions she formerly held.  Belz Aff. Para 4; Ex. "b".  Video

excerpts from Plaintiff's actual interactions with Defendant's clients likewise demonstrate that she exercised independent discretion and judgement while performing this service. Beltz Aff. Para. 6; Ex. "d".

Notwithstanding this irrefutable evidence, Plaintiff argues that she did not perform work directly related to the management or general business operations but instead was an automaton who performed "Routine Scripted Tasks". Pl. Br. p. 7. Plaintiff asserts that her role was "essentially customer-facing data entry and script-following." Id. at 7. Instead of evaluating the manner in which Plaintiff characterized her job function during her deposition, which is suspect, this Court should look to her actual job description and functionality in the capacity of a Business Coach. No better evidence of this exists than the videos. See Beltz Aff. Para. 6; Ex. "d".

The Court in Swartz also evaluated the third requirement - whether the employee in that case exercised discretion and independent judgment with respect to matters of significance. The Court reasoned that it was up to the plaintiff in that case to assess the unique needs of the client. His goal was to "... find the right combination of products at a price the customer was willing to pay " Id. at 105. This required him to compare and evaluate options and to make decisions after considering each possibility. Thus, the Court concluded that his duties included the exercise of discretion and independent judgment. Ultimately, the Court concluded that the plaintiff was not entitled to overtime pay. Id. at 105.

### C. **Plaintiff's Self-Serving Testimony Contradicts the Record and Should be Discounted for Purposes of Defendant's Motion.**

The U.S. Supreme Court has held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of the facts for purposes of ruling on a Motion for Summary Judgment." Scott v. Harris, 550 U.S. at 380.  Although this is a limited exception, it has been adopted and applied by this Circuit.  In Berrada v. Cohen, 792 F. App'x 158, 161 (3d Cir. 2019), the Third Circuit affirmed the grant of summary judgment in an employment dispute where the plaintiff employee "offer[ed] no corroboration for his testimony" and "his testimony [was] contradicted by indisputable evidence".  Indeed, as a general principal, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." Gonzalez v. Sec'y of Dep't of Homeland Sec., 678 F.3d 254,263 (3d Cir. 2012).  See also: Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)("Summary Judgment may be granted when a Plaintiff's testimony is largely unsubstantiated by direct evidence and is replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the Plaintiff's allegations.").

     According to her deposition testimony, Plaintiff wants this Court believe that she was little more than a scripted customer service representative while working for Defendant, and therefore, non-exempt.   However, with the exception of her testimony, none of the evidence in the record corroborates this assertion.  Even the evidence she has produced would lead any reasonable person to believe that she exercised discretion and independent judgment as a business coach.

     First, the credentials identified by Plaintiff in resume are synonymous with independent decision-making.  According to her resume, she "spent over thirty 30 years as a successful business owner, coach, consultant, strategist, director, and corporate trainer helping Fortune 50 Corporations, Non-Profits, Faith-based Organizations, and

small businesses overcome challenges, increase profitability, improve efficiencies, develop leadership, and build strategic partnerships." Beltz Aff. Para. 4; Ex "b". Given her years of experience and her credentials, no one could reasonably believe that she would even accept, let alone work in such a "scripted" capacity. Further, in an apparent attempt to de minimize her professional credentials, she testified that she only held <u>one</u> certification. Kraxberger Dep. 7:20-23. Yet, her resume is chock full of her credentials, certificates and other training accomplishments. Beltz Aff. Para. 4; Ex "b".

Second, Defendant's job description directly contradicts her testimony. According to her formal job description, she was required, amongst other duties, to <u>engage in problem solving</u>, provide <u>advice based on company frameworks</u>, maintain and enforce program standards, implement new program initiatives, <u>identify client struggles and offer solutions</u> to them, and work with clients to enhance their strategic planning, execution and overall business performance. Beltz Aff., para. 5, Ex. "c". (emphasis added). These are certainly not the functions of a customer service representative.

Third, the video excerpts of Plaintiff's sessions with clients, produced during discovery, also flatly contradict her testimony. See Beltz Aff. Para. 6; Ex. "d". These excepts speak for themselves. Plaintiff repeatedly touts her business acumen and expertise, offers dynamic suggestions after listening to her client's problems and needs, and all while doing so <u>without</u> <u>a</u> <u>script</u>.

Fourth, even Plaintiff's self-evaluation contradicts her deposition testimony. In Plaintiff's self-evaluation she indicated that she was: "coaching clients at all levels using the methodologies of SMB and real-world experience to move them to executing and achieving their goals." Kraxberger Dep. 62:3-10. In that same self-assessment, she

refers to herself as the "go to person for the coaching team." Kraxberger Dep. 64:6-10. These are hardly the attributes of a customer service representative.

Fifth, Plaintiff seemingly goes out of her way in her Deposition to diminish her job responsibilities and functions with Defendant. Plaintiff makes the following assertions: "Again, I could not give advice based on anything other than their direction on what to do." Kraxberger Dep.38:2-5. When questioned why her job description included giving advice to clients, she states: "In the document it says so. In reality, no.". Id. at 37:19-23. When questioned further on this she qualified her answer as follows: "I did do this but I do not have the ability to do without somebody telling me if I was doing it right or wrong, to be honest." Kraxberger Dep. 37:13-16. Further, her answers are evasive and contradictory. The following exchange took place in this regard:

Q. So, you had no independent discretion to talk to a client or give advice to a client?

A. No. I was required to stay within their framework.

Q. The answer is you had no independent discretion –

A. The answer is no, I was required to stay within their framework.

Kraxberger Dep. 47:3-11. Staying within an employer's "framework" does not mean that an employee does not otherwise have the freedom to independently advise or counsel clients, as Plaintiff had in this instance.

Sixth, Plaintiff makes several outlandish statements during her deposition, even comparing herself to an Apple customer service representative. Plaintiff testifies: "…It's no different than working at Apple and the customer person comes up on the screen and says: 'Have you checked your mouse to see if it's plugged in?"…"Have you

Page 14

rebooted your computer?" Kraxberger Dep. 46:15-25. However, the videos clearly do not depict "customer-service" type interactions. See Beltz Aff. Para. 6; Ex. "d".

In a final, thinly veiled attempt to bolster her claims against Defendant, Plaintiff even de minimizes her functions in her current employment. Less than 60 days after her separation with Defendant, Plaintiff was hired as Executive Director by NexGen Cyber Talent at a salary of $90,000 per annum. Kraxberger Dep. 89-90. She only works 10 hours per week in this capacity. Kraxberger Dep. 90:16-18. According to her offer letter, Plaintiff's job functions consisted of <u>strategic planning</u>, providing <u>visionary leadership to the board</u>, staff and volunteers, governance and board relations, fundraising and resource development, <u>program and operations management</u>, amongst other duties. See Ex "C". (emphasis added). Yet, when questioned about her functions in this capacity, she astonishingly describes them as little more than "secretarial" and "customer service". Kraxberger Dep. 90:10-16. While Defendant appreciates that Plaintiff's future employment has no bearing on her instant overtime claims, these facts are relevant for purposes of challenging the legitimacy of her deposition testimony.

Based on these inconsistencies, blatant contradictions and her self-serving testimony, Plaintiff's deposition testimony should be discredited.

## IV. <u>CONCLUSION</u>:

The only evidence of misclassification presented by Plaintiff is her self-serving opinion of the work she performed for Defendant. In reality, however, her testimony defies every tangible piece of evidence, including her resume, the job description, the actual videos of her sessions with client, her self-evaluation, and even the job

description in new position as an executive director. Her deposition testimony should be discredited by this Court.

As such, based on the evidence in the record, this Court should rule that Defendant appropriately classified Plaintiff as exempt, and that she is therefore not entitled to any overtime pay under the law. Defendant's Motion for Summary Judgment should therefore be granted.

                        **LOVITZ LAW FIRM, P.C.**

By:_____
     KEVIN I. LOVITZ, ESQUIRE
     ID # 70184
     One Liberty Place
     1650 Market Street, 36th Floor
     Philadelphia, PA 19103
     (215) 735-1996 Phone
     (215) 735-1515 Fax
     Email: kevin@lovitzlaw.com
     *Attorney for Defendant, SMB Team, LLC*