IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE KRAXBERGER, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | NO: 24-CV-05900-MKC |
| v. | : | |
| SMB TEAM, LLC | : | |
| Defendant. | : | |

### DEFENDANT'S REPLY BRIEF IN SUPPPORT OF MOTION FOR SUMMARY JUDGMENT

I. **DEFENTANT'S RESPONSE TO PLAINTIFF'S ADDITONAL MATERIAL FACTS**

    1.    Plaintiff's offer letter speaks for itself.  Plaintiff was hired by Defendant as a Coaching Program Advisor pursuant to the offer letter she received from Defendant on April 25, 2023.  See: Affidavit of Brennan Beltz ("Beltz Aff.") para. 2; Ex. "a".  According to Plaintiff's formal job description and responsibilities, her position was that of "Business Coach and Strategist." Id.

    2.    Denied.  Plaintiff was not tightly controlled and had both independent discretion and judgment.  Plaintiff was permitted to modify Defendant's coaching framework depending on the circumstances of the client's needs. Beltz Dep. 26:9–15. Plaintiff also did not need her manager's approval to provide business coaching advice to clients which was based on her own business expertise. Beltz Dep. 29:7–14. It was up to Plaintiff as to how the client was to reach these goals. Beltz Dep. 18:5–14. Plaintiff designed and facilitated her sessions with clients to get these results as she saw fit. Beltz Dep. Beltz Dep. 26:1–8.  She was not

provided any script as to how she was to perform her coaching job. Beltz Dep. 35:23–25; 36:2.

3. Denied. Plaintiff mischaracterizes Defendant's "fast track feedback form". These forms were used by Plaintiff and other coaches in order to assist with counseling and strategizing with clients. The form is designed to cull information from Defendant's clientele to provide Business Coaches with financial information to assist them with setting client goals during coaching sessions. It is not a script by which Business Coaches perform their job functions. Beltz Aff., para. 7; Ex. "e".

4. Admitted in part; denied in part. Although Plaintiff received training on Defendant's coaching framework, there was no script and she was not told what to specifically say or how to provide the content. Plaintiff was permitted to modify Defendant's coaching framework depending on the circumstances of the client's needs. Beltz Dep. 26:9–15.

5. Denied. To the contrary, Plaintiff was expected to do so. Although Plaintiff received guidance from Defendant, she was expected to perform her job functions as a business coach independently. The decisions Plaintiff made for her clients were based on her own business expertise. Beltz Dep. 29:7–14. She did not need any approval for recommendations made to clients. Beltz Dep. 29:15–20. Plaintiff also did not need her manager's approval to provide business coaching advice to clients which was based on her own business expertise. Beltz Dep. 29:7–14. It was up to Plaintiff as to how the client was to reach these goals. Beltz Dep. 18:5–14. See Videos, Beltz Aff. Para. 6; Ex. "d".

6. Denied. Plaintiff did not simply "deliver" content. Defendant's Business Coaching operation represented 1/3 of their business. Beltz Dep. 7:10–14. Her job was to increase leads, profit and efficiency of Defendant's law firm clients, assisting clients in developing actionable claims and KPIs, otherwise known as key performance indicators. This involved offering insights and best practices to improve organizational performance. Beltz Dep. 20:11–22.

7. Denied. Plaintiff was involved in delivering strategic business development to Defendant's Clients. Plaintiff did not simply "service" or "help" external clients. Defendant's Business Coaching operation represented 1/3 of their business. Beltz Dep. 7:10–14. Her job was to increase leads, profit and efficiency of Defendant's law firm clients, assisting clients in developing actionable claims and KPIs, otherwise known as key performance indicators. This involved offering insights and best practices to improve organizational performance. Beltz Dep. 20:11–22.

8. Plaintiff's factual assertion constitutes a conclusion of law, and presumes Plaintiff was legally entitled to overtime. Plaintiff was a salaried exempt employee. She was compensated properly based upon her correct classification. Plaintiff did work in excess of 40 hours as expected. Defendant did not pay overtime to Plaintiff and other similarly exempt employees, because they were not entitled to the same. Belz Dep. 15:8-24.

9. Denied. Plaintiff's concerns were not dismissed or met with such suggestions. Plaintiff communicated that she worked extra hours "every now and then, but never asked for payment for overtime pay. Beltz Dep." 15:6–10. Plaintiff

was simply upset with the fact that she was working extra hours and not being compensated commensurately with the amount of work she was performing for Defendant. Beltz Dep. 15:21-24. Business Coaches are permitted to work remotely, but are not supposed to work after hours or weekends. Beltz Dep. 12:19–20. If this happens, employees are spoken to so that they better utilize their time throughout the day. Beltz Dep. 12:21–24. Defendant encourages employees to work during work hours and not on weekends or after hours. Beltz Dep. 13:6–12.

10. It is admitted that Defendant's CFO made this remark in an email. The remarks are irrelevant however with regards to Plaintiff's claim that she was an exempt employee.

11. Denied as irrelevant and inadmissible. The fact that other employees may or may not have complained, is irrelevant to whether there is any FLSA violation in the instant case. No employees other than Plaintiff have testified on her behalf under oath and any reference to the same are hearsay.

12. Denied. See responses 2, 5, and 6 above; See also Videos, Beltz Aff. Para. 6; Ex. "d".

13. Denied. See responses 2, 5, and 6 above; See also Videos, Beltz Aff. Para. 6; Ex. "d".

14. This allegation is irrelevant.

15. This allegation is not factual and constitutes a legal conclusion. No response is therefore required.

16.     Denied.  The videos were produced on July 10, 2025, before the close of discovery.  See  Defendant's Motion for Summary Judgment, Ex. "A", and Defendant's Response to Plaintiff's Motion to Strike (ECF 40), which Defendant incorporates herein by reference.  The videos were produced with a correspondence identifying what they were.  Although Plaintiff was invited to discuss this production and the case, she did not do so.  Plaintiff also did not conduct any further discovery with regard to the videos.

17.     Denied.  Exhibit "D" is not a script.  It is not identified as such.  It is entitled "SMB Team Client Experience Standards 2002".  The document's headings speak for themselves.  It provides Goals, Experience Standards, Feelings to Create in Clients, Onboarding and Monthly Strategy and other Principles.

## II  ARGUMENT:

**1.    Plaintiff's Actual Work Was Independent and Free From Direction.**

While Plaintiff's job description admittedly does not constitute dispositive evidence of the Plaintiff's duties,  neither does Counsel's characterization of the same.  Counsel has asserted a multitude of descriptive phrases regarding Plaintiff's actual work, including that her work as "heavily controlled", "scripted", as lacking "any real discretion or independent judgment", and "confined to presenting preapproved materials."  Pl. Reply Br. p. 1 and 10.   Yet nothing in the actual video evidence, which Plaintiff only objects as matter of law, demonstrates that Counsel's descriptions are accurate.  Plaintiff is not reading from a script during these presentations, repeatedly extols her business acumen and expertise, and draws from her own business

experiences amongst many of her techniques. See also Videos, Beltz Aff. Para. 6; Ex. "d".

2. **There Was No Pre-set Script**

Plaintiff asserts that she provided undisputed testimony that her daily duties as a business coach consisted of following "preset scripts", using "predefined frameworks", and "referring decisions back to management". Her arguments are not supported by the evidence. Although Plaintiff continues to assert that she performed according to a preset script, this is not the case. This Court need look no further than the video excepts of Plaintiff as she <u>actually</u> performed her job. She is not reading from a script during any of these video sessions. She is not immediately referring decisions back to management. She is not using predefined frameworks.

Further, Plaintiff has yet to address the substantive contents of the Videos. Indeed, Plaintiff offered no factual response denying that the videos depict Plaintiff her while she was working. Defendant's statement of fact with regard to the videos was as follows: 23. Attached are Video excerpts from various sessions conducted by Plaintiff with Defendant's clientele. Beltz Aff. Para. 6; Ex. "d". Instead of denying the videos as not depicting Plaintiff while she was working with Defendant's clientele, she avoids any response by only making a legal objection to this production. (See Plaintiff's Response to Defendant's Motion for Summary Judgment, #23).

The Exhibit attached by Plaintiff as exhibit 'D" is also not evidence of any script. (See Ex. D., Plaintiff's Response Brief). This is a document entitled "SMB Team Client Experience Standards 2022". It is not entitled "script" in any way, shape or form. The

document contains topics such as "C's of High AR our Renewal Rates", "Company Wide Client Experience Standards", "Feelings to Create in Our Clients", "Immediate Solutions", "Onboarding, Monthly Strategy and Renewal Call Structures".  Indeed, the only mention of the word "script" in this document occurs in a guideline for onboarding clients on page 3.  It does not delineate a verbatim script as to what to say to a client during a session.   It is also mentioned with respect to a "Grandfathered Rate Renewal Script", a procedure which occurs at the end of the contract with the client.  Once again, there is no predetermined, pre-ordained script in this section either.

### 3.  <u>Neither Predefined Frameworks Nor Managerial Review Make Plaintiff Nonexempt</u>.

Plaintiff additionally argues that she was required to follow "pre-approve materials", and adhere to a "company created framework". Pl. Br. p 13. These arguments do not advance her claims however.

According to the 5 C.F.R. 551.206 (c):

*"The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. <u>However, an employee can exercise discretion and independent judgment even if the employee's decisions or recommendations are reviewed at a higher level.</u> Thus, the term discretion and independent judgment does not require that decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. <u>The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment.</u>"* (emphasis added)

By the same token, the 5 C.F.R. 551.206 (f) states in pertinent part:

"(f) The use of manuals, guidelines, or other established procedures containing or relating to highly technical, scientific, legal, financial, or other similarly complex matters that can be understood or interpreted only by those with advanced or specialized knowledge or skills does not preclude exemption. <u>Such manuals and procedures provide guidance in addressing difficult or novel circumstances and thus use of such reference material would not affect an employee's exemption status.</u> (emphasis added)."

4. <u>**Servicing Defendant's Clients Does Not Make Plaintiff Exempt**</u>.

Plaintiff argues that she is exempt because her work "served Defendant's clients – not Defendant's internal business operations as required under the administrative exemption." Pl's. Reply Br. P. 1. Plaintiff continues to neglect a significant aspect of the Administrative Exemption – that it applies to work conducted for Defendant's clients as well. The administrative exemption applies to any employee who's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer <u>or the employer's customers.</u> See 29 C.F.R. § 541.200(a) (2016)(emphasis added). As such, Plaintiff's assertions are without merit.

5. <u>**Swartz v. Windstream is relevant to the present case**</u>.

The Third Circuit noted that the primary duty of the Plaintiff in <u>Swartz</u> was work that he serviced his employer's core business - the sale of Telecom Systems. 429 Fed. Appx. at 105. The Court acknowledged that "an employee's primary duties are directly related to his employer's management or general business operations when the employee 'performs work directly related to assisting with the running or servicing of the business'". <u>Id</u>. Defendant's core business involves providing Business Coaching services to its clientele, law firms. Plaintiff was hired as a Business Coach to provide Defendant's customers with monthly accountability calls, problem solving, advice,

maintaining and enforce program standards, implementing new program initiatives, identifying client struggles and offering solutions to clients, and working with clients to enhance their strategic planning, execution and overall business performance.  Beltz Aff., para. 5; Ex. "c".  These functions constituted work that services Defendant's core business – the Business Coaching function.

Plaintiff's attempt to distinguish Swartz is likewise misplaced.  Plaintiff argues that this Court should not be guided by Swartz because the Plaintiff's position in that case involved a higher level of technical qualification and independence.  According to Plaintiff, the plaintiff in Swartz was not simply presenting "pre-set options for reading from a script". Plaintiff's Br. p12. The fact of the matter is that the plaintiff in Swartz did operate with the same independence and discretion as did the Plaintiff in the case at bar.  As the Court in Swartz reasoned:  "Windstream's customer base was varied; it included, for example, major hospitals, banks, and law firms. Each customer's needs varied with the nature of its business. It fell to employees such as Swartz to assess these unique needs and to design telecommunications systems to meet them.  In so doing, Swartz had access to a sizable product portfolio line. The inclusion (or exclusion) of different products in different combinations naturally impacted the ultimate sales price.  Swartz's goal was to find the right combination of products at a price the customer was willing to pay. This task required him to compare and evaluate discrete options, and to make a decision after he had considered each possibility. Swartz's duties thus included the exercise of discretion and independent judgment." Swartz at 104.

Plaintiff's job functions are no different than the ones the plaintiff held in <u>Swartz</u>. Defendant's customer base includes various law firms of different sizes and substantive practice areas. It was Plaintiff's responsibility to find the right combination of coaching methodologies to enhance the business of Defendant's clients. She was vested with the discretion to apply her business acumen and experience, which he touted, to meet the needs of Defendants customers. To do so, she had to consider various options based on the information she received from the client and employ the best possible approach to their particular circumstance. This was within her discretion. Beltz Dep. 29:7–14; 18:5–14; 26:1–8. As previously argued, Plaintiff was not a pre-scripted customer service representative as she asserts. Based on similar facts in <u>Swartz</u>, the Court concluded that that plaintiff fell within the administrative exemption of the FLSA. The instant Plaintiff should be no different.

## III **CONCLUSION**:

Base on the above arguments and the arguments contained in Defendant's Motion and Memorandum of Law, Defendant's Motion for Summary Judgment Should be Granted

**LOVITZ LAW FIRM, P.C.**

BY: _____
KEVIN I. LAW LOVITZ, ESQUIRE
ID # 70184
One Liberty Place
1650 Market Street, 36th Floor
Philadelphia, PA 19103
(215) 735-1996 Phone
(215) 735-1515 Fax
*Attorney for Defendant, SMB Team LLC*